HENRY B. DOUGLAS, Mayor, *et al.*

*v.*

THE PEOPLE *ex rel.* J. J. Ruddy.

*Opinion filed February 21, 1907.*

1. CONSTITUTIONAL LAW—*right of citizen to engage in business is subject to State's police power.* The right of a citizen to follow any legitimate business or occupation as a means of livelihood is subject to the paramount power of the State to impose any reasonable regulations the public welfare may require.

2. SAME—*legislature may regulate business of plumbing.* The legislature has power to regulate the business of plumbing by imposing such restraints and prescribing such requirements as it may deem proper for the protection of the public against the evils resulting from the incapacity and ignorance of persons engaged in such business as master plumbers, employers of plumbers or journeymen plumbers.

3. SAME—*classification by population, as a basis for legislation, may be proper.* A classification of cities, towns and villages by population, as a basis of legislation, may be properly made, if there is a rational difference of situation or condition found in the municipal corporations placed in the different classes.

4. SAME—*classification of cities in act relating to plumbers is rational.* The act of 1897, (Laws of 1897, p. 279,) requiring all plumbers in cities, towns and villages of 5000 inhabitants or more to obtain certificates, and requiring cities, towns and villages of 10,000 or more inhabitants to appoint and maintain a board of ex-

aminers to inquire into the qualifications of persons engaged in plumbing and to issue certificates, is not unconstitutional as respects the classification of such cities by population.

5. SAME—*a law is general if it operates on all persons similarly situated.* A law is general and uniform if it operates alike upon every person in the State who is brought within the conditions and circumstances prescribed by the law.

6. SAME—*the act of 1897, relating to plumbers, is constitutional.* The act of 1897, (Laws of 1897, p. 279,) requiring plumbers in cities, towns and villages of 5000 or more inhabitants to obtain certificates, and requiring cities, towns and villages of 10,000 or more inhabitants to appoint and maintain a board of examiners to inquire into the qualifications of persons engaged in the plumbing business and issue certificates, is a valid exercise of the police power of the State, is not a local or special law and does not confer arbitrary powers upon the boards of examiners.

APPEAL from the Circuit Court of Kane county; the Hon. CHARLES A. BISHOP, Judge, presiding.

E. M. MANGAN, City Attorney, for appellants.

FRANK R. REID, State's Attorney, (E. B. QUACKEN-BUSH, of counsel,) for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a petition filed in the circuit court of Kane county in the name of the People, upon the relation of J. J. Ruddy, a resident and tax-payer of the city of Aurora, in said county, against the mayor and aldermen of said city, for a writ of *mandamus* commanding the mayor to appoint, and the aldermen to confirm the appointment of, the second and third members of a board of examiners of plumbers, in accordance with the provisions of section 3 of an act of the General Assembly of the State of Illinois entitled "An act to provide for the licensing of plumbers and to supervise and inspect plumbing," approved June 10, 1897, in force July 1, 1897. (Hurd's Stat. 1905, p. 403.) It was averred in the petition said mayor had refused to appoint said second and

third members of said board of examiners and that the city council would refuse to confirm their appointment, and that the city of Aurora was organized under the general law for the incorporation of cities and villages, and that it had a population of more than ten thousand inhabitants. A demurrer was filed to said petition by the respondents on the ground that said act of the General Assembly was in violation of section 1 of article 2 and section 22 of article 4 of the constitution of the State of Illinois, and section 1 of the fourteenth amendment to the constitution of the United States, and therefore unconstitutional and void. The demurrer was overruled, and the respondents having elected to stand by their demurrer and refusing to answer over, a judgment was rendered against them in accordance with the prayer of said petition, and they have prosecuted an appeal to this court to review said judgment.

Section 1 of said act provides that any person now or hereafter engaging in or working at the business of plumbing, in cities, towns or villages of five thousand inhabitants or more, in this State, either as a master plumber or employing plumber or as a journeyman plumber, shall first receive a certificate in accordance with the provisions of said act.

Section 2 provides that any person desiring to engage in or work at the business of plumbing, either as a master plumber or employing plumber or as a journeyman plumber, shall make application to a board of examiners thereinafter provided for, and shall, at such time and place as said board may designate, be compelled to pass such examination as to his qualifications as said board may direct. Said examination may be made in whole or in part in writing, and shall be of a practical and elementary character, but sufficiently strict to test the qualifications of the applicant.

Section 3 provides that there shall be, in every city, town or village of ten thousand inhabitants or more, a board of examiners of plumbers, consisting of three members, one of whom shall be the chairman of the board of health, who shall

be chairman of said board of examiners; the second member shall be a master plumber and the third member shall be a journeyman plumber. Said second and third members of said board shall be appointed within three months after the passage of said act by the mayor and said appointment confirmed by the city council or trustees of said city, town or village, and shall hold such appointment for a period of one year from the first day of May in the year of their appointment, and said second and third members shall be appointed annually thereafter, before the first day of May, which members shall be paid from the treasury of said city, town or village in the same manner as other officers, in such sums as the city, town or village authorities may designate.

Section 4 provides that said board of examiners shall, as soon as may be after their appointment, meet, and designate the times and places for the examination of all applicants desiring to engage in or work at the business of plumbing within their respective jurisdictions; and said board shall examine said applicants as to their practical knowledge of plumbing, house drainage and plumbing ventilation, and if satisfied of the competency of the applicant shall thereupon issue a certificate to such applicant authorizing him to engage in or work at the business of plumbing, whether as master plumber or employing plumber or as a journeyman plumber, the fee for a certificate for a master plumber or employing plumber to be five dollars and for a journeyman plumber one dollar; said certificate to be valid and have force throughout the State, and all fees received for certificates to be paid into the treasury of the city, town or village where said certificates are issued.

Section 5 provides that each city, town or village in this State having a system of water supply or sewerage shall, by ordinance or by-laws, within three months after the passage of said act, provide rules and regulations for the materials, construction, alteration and inspection of all plumbing and sewerage placed in or in connection with any. building in

such city, town or village, and the board of health or proper authorities shall further provide that no plumbing work shall be done, except in case of repairing leaks, without a permit being first issued therefor, upon such terms and conditions as such city, town or village shall prescribe.

Section 6 provides that each person who is required to take an examination and procure a certificate, as required by said act, shall apply to the board in the city where he resides or to the board nearest his place of residence.

Section 7 provides that any person violating any of the provisions of this act shall be deemed guilty of a misdemeanor, and be subject to a fine of not less than $5 nor exceeding $50 for each and every violation thereof, and his certificate may be revoked by the board of health or the proper authorities of said city, town or village.

Section 8 provides that all acts and parts of acts inconsistent with said act are repealed.

It is first contended that the act hereinbefore referred to is in conflict with those provisions of the constitution of this State and of the United States which provide that no person shall be deprived of life, liberty or property without due process of law. The right of the citizen to follow any legitimate business, occupation or calling which he may see fit to engage in, and to use such right as a means of livelihood, is fully recognized in the constitutions of this State and of the United States. (*Gillespie* v. *People,* 188 Ill. 176; *Bessette* v. *People,* 193 id. 334.) Such right, however, is subject to the paramount right of the State to impose upon the enjoyment thereof any reasonable regulation the public welfare may require, and the courts have frequently held that the legislatures of the several States may impose any restraint and prescribe any requirement they may deem proper for the protection of the public against the evils resulting from the incapacity and ignorance of persons engaged in the plumbing business, as master plumbers, employers of plumbers or journeymen plumbers. *Singer* v. *State of Maryland,* 8

L. R. A. 551; *People* v. *Warden of the City Prison, 27* id. 718; *State* v. *Gardner,* 58 Ohio St. 599; 41 L. R. A. 689.

In the *Singer case, supra,* the Supreme Court of Maryland said: "We all know that in a large city like Baltimore, with its extensive system of drainage and sewerage, the public health largely depends upon the proper and efficient manner in which the plumbing work is executed. And this being so, the legislature not only has the power, but it is eminently wise and proper that it should provide some mode by which the qualifications of persons engaged in that business shall be determined."

In *People* v. *Warden of the City Prison, supra,* the Court of Appeals of New York was considering the constitutionality of an act providing for the licensing of employing plumbers, and that court said: "We know that important plumbing work calls for plans and designs and requires skilled supervision. It is some guaranty of these requirements being met that the plumber employed upon the particular work, and who must employ plumbers and assistants in carrying out the work engaged upon, is competently certified and therefore held out to be skilled and capable in his business. The layman, in his ignorance, is obliged to put some trust in the plumber he engages, for the plumber's work is not only one calling for the exercise of skill, but it is done in places which are dark or more or less inaccessible. The legislature, in creating a system by which the qualifications of plumbers who propose to have work performed by others under their direction shall be determined, as it seems to me, aids the citizen, in an important degree, in placing his confidence and furnishes some safeguard against the performance of bad and unsafe work. That the men employed by the master plumber may prove untrustworthy in practice or may neglect the work committed to them certainly can furnish no ground for attacking the purpose of the statute, for the presumption and the natural probability are the other way,—that a master plumber who has been certified by the

board will exercise care in the selection of his employees, and he will be competent to see and correct their faults and omissions. Every reason, in my opinion, which bears upon the citizen's comfort and health demands that we sustain this statute as a step in the right direction."

And in *State* v. *Gardner, supra,* the Supreme Court of Ohio, in considering the right of the legislature to regulate the business of plumbing and provide for the licensing of plumbers, said: "True it is that the business of the plumber is not ranked with the learned professions, and that much of his work is mechanical, merely, calling for exercise of deftness of the hands rather than the possession of scientific knowledge. Yet a certain degree of training and experience is absolutely necessary to render one intelligent as to the groundwork of his calling as well as competent and skillful in its exercise. He is required to put into our dwellings and public buildings tanks, pipes, traps, fittings and fixtures for the conveyance of gas, water and sewage, which require, among other essentials, the keeping out and protection against gases which are destructive of health and not infrequently of life itself. That it is of the highest importance that the drainage and sewerage of our public buildings and private tenements should be as skillfully planned and executed as the modern standard of science admits would seem not to be open to question. And surely it is reasonable to suppose that one who has been educated to understand the scientific principle necessarily involved in work of this character and to comprehend the reasons and teachings of experience upon which it is based and the evil results which may follow neglect to observe it, will be more likely to provide the needful safeguards than one who is ignorant upon the subject. It is conceded by those who doubt the power as well as the propriety of regulation of the work itself, that the legislature has power to provide for a careful sanitary inspection of plumbing work, and in this way secure a result, as to its system and sufficiency, which will tend towards the protec-

tion of the health of the general public.   But it is difficult to perceive a reason for the exercise of the power last referred to which does not as well apply to the other, for if it be wise to devise means by which a good result may be obtained by careful inspection, it would seem clear that methods which are calculated to reduce the hazards of careless inspection would tend in the same direction; and defects revealed by inspection would, it would seem, be more likely to be remedied if the hands which should be called upon to do the work of correction were guided by minds trained in the science of the business as well as skilled in the mere manipulation of the tools.   The question really is, Does the requirement of examination as to the fitness reasonably tend to accomplish the object?—is it appropriate to that end?   Not, necessarily, Does it accomplish it? nor, Does it make further care in the same direction unnecessary?   We think it does so tend and is appropriate to the purpose, and that, therefore, the act does not unreasonably interfere with the right to labor.   It is not here contended that the same high qualifications as to scientific acquirement should be required of the journeyman,—one whose principal work is manual,—as is required of the master plumber,—the one who makes the plans and specifications for the work and passes judgment upon the strength, durability and quality of the material and the devices for perfect work; nor does that seem to be the import of the act, especially when it is noted that the fee for license charged is in the one case one dollar and in the other five dollars.   If the examination be sufficiently searching to show that the journeyman understands the principles governing his trade and is sufficiently skillful to be able to produce good results, that would seem to satisfy the scope of this act."

It is generally held that the legislature of a State may pass laws for the protection of the health, comfort, safety or welfare of society, and in view of the right to exercise this general power, and the holdings of the courts in the

cases from which the citations hereinbefore set out are made, we think it clear the subject matter covered by the statute whose constitutionality is here assailed was properly incorporated into law by the legislature under an exercise of the police power of the State.

It is next contended that the classification by said statute of the different cities, towns and villages of the State into three classes,—namely, those having less than five thousand inhabitants, those of five thousand inhabitants or more and those of ten thousand inhabitants or more,—is an arbitrary classification, and that by reason of that fact said act is special and class legislation, and void. The general rule is, that a classification of the cities, towns and villages of the State by population, as a basis for legislation, may be made if such classification is based upon a rational difference of situation or condition found in the municipalities placed in the different classes, otherwise legislation based upon such classification will not be sustained. (*People* v. *Knopf,* 183 Ill. 410; *L'Hote* v. *Village of Milford,* 212 id. 418.) The statute under consideration does not apply to cities, towns or villages whose inhabitants number less than five thousand, but does require master plumbers, employing plumbers and journeymen plumbers who engage in or work at the business of plumbing in cities, towns or villages of five thousand or more inhabitants to pass an examination and obtain a certificate, in accordance with the provisions of the act, before engaging in business or in work; and in cities, towns or villages of less than ten thousand inhabitants no board of examiners are required to be appointed and maintained, while in cities, towns or villages of ten thousand inhabitants or more such boards are required to be appointed and maintained. We think it clear that there is a rational difference in the situation or circumstances, so far as the plumbing business and the appointment of a board of examiners of plumbers are concerned, between a city, town or village of less than five thousand inhabitants and a city, town or village of

five thousand inhabitants or more, and between a city, town or village of less than ten thousand inhabitants and a city, town or village of ten thousand inhabitants or more;  that is, a city, town or village of less population than five thousand usually does not have a complicated system of sewers and is often without a system of water supply, and has but little use for a complicated system of plumbing in its buildings or otherwise, while in a city, town or village of five thousand inhabitants or more a system of water supply and sewerage is likely to be established and a complicated system of plumbing made necessary, and the workmen who are to perform the work of supplying the plumbing to connect with said complicated system of water supply and system of sewers must necessarily have more experience and knowledge than it would be necessary to possess to install the plumbing in a house in a small city, town or village;  and while the maintaining of an examining board might be burdensome and unnecessary in a city, town or village whose inhabitants number less than ten thousand, in a city, town or village of that number of inhabitants or more such examining board would be necessary and the expense of maintaining the board not burdensome.

It is also urged that the act is not general in terms and does not apply to all persons in the State alike, and for that reason, it is said, it is class or special legislation.  The act does apply uniformly to the persons engaged in or working at the business of plumbing as master plumbers, employing plumbers or journeymen plumbers in the several classes of cities, towns and villages created by the act throughout the State, and we think, therefore, it is not subject to the criticism of want of uniformity in its application.  A law is said to be general and uniform, not because it operates upon every person in the State alike, but because it operates alike upon every person in the State who is brought within the conditions and circumstances prescribed by the law.  (*People* v. *Board of Supervisors*, 223 Ill. 187.)  In *People* v. *Hazelwood*, 116

Ill. 319, on page 329, it was said: "Laws are general and uniform, and hence not obnoxious to the objection that they are local or special, when they are general and uniform in their operation upon all in like situation."

It is also urged that arbitrary powers are conferred by the statute upon the board of examiners provided for by said act. We cannot discover wherein such can be said to be the fact. The act provides that the board, when created, as soon as may be shall meet, and designate a time and place for the examination of all applicants desiring to engage in or work at the business of plumbing within their jurisdiction. The examination, it is provided, may be oral or in whole or in part in writing, and is to be conducted with a view to test the practical knowledge of plumbing, house drainage and plumbing ventilation of the applicant, and if, upon such examination, the examining board shall be satisfied of the competency of the applicant, they shall issue to him a certificate authorizing him to engage in or work at the business of plumbing as a master plumber or employing plumber or a journeyman plumber, as the case may be. While the act may not be perfect in all its details, we think it a step in the right direction and that it is not unconstitutional.

In the case of *Wilkie* v. *City of Chicago,* 188 Ill. 444, the consideration of the effect of the act whose constitutionality is now challenged was before this court, and while its constitutionality was not then called in question it was recognized as a valid enactment, and was held to work a repeal of the City and Village act in so far as that act authorized cities to license plumbers. Had it then been thought the act was unconstitutional a different conclusion from that reached by the court must have been arrived at in that case.

From a careful examination of this record we are of the opinion that the act of June 10, 1897, providing for the licensing of plumbers and inspection of plumbing, is a valid law, and that under the third section thereof it was the duty of the mayor of said city to appoint two members of the

board of examiners of plumbers and of the aldermen to confirm their appointment, unless grounds appeared against such confirmation other than that the act under which they were appointed was unconstitutional and void.

The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*